United States District Court
Southern District of Texas
**ENTERED**
October 05, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RONALD BRUCE DUNCAN, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-00392 |
| | § | |
| SMITH & NEPHEW, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Before me is Defendant Smith & Nephew, Inc.'s Rule 12(b)(6) Motion to Dismiss Plaintiff Ronald Bruce Duncan's First Amended Complaint ("Motion to Dismiss"). *See* Dkt. 11. After considering the briefing on the Motion to Dismiss, the First Amended Complaint, and applicable law, I **RECOMMEND** that the Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

### BACKGROUND

The First Amended Complaint alleges the following: Plaintiff Ronald Bruce Duncan ("Duncan"), a resident of Crystal Beach, Texas, underwent a total right knee replacement in January 2011. The surgery, performed by Dr. Ronald Talbert at Christus Hospital St. Elizabeth in Beaumont, Texas, utilized the Genesis II Right Total Knee System manufactured, marketed, and sold by Smith & Nephew, Inc. ("Smith & Nephew"). The specific components of the knee replacement system allegedly included a Genesis II Oxinium Femoral size 6 component; a Genesis II size 5-6 13mm articular insert; a Genesis

1

II oval 32mm Patellar component; and a Genesis II size 5 Tibial Baseplate component (the "Knee Replacement System").

After the surgery, Duncan reportedly began to experience severe right knee pain and increasing right knee deformity. Medical professionals recommended that Duncan undergo surgery to replace the failed knee implant. The replacement surgery took place on August 23, 2017, also at Christus Hospital St. Elizabeth in Beaumont, Texas. During the surgery, doctors found "a very loose tibial component with extensive bone loss, and the femoral component was completely loose." Dkt. 10 at 8. As a result, Duncan contends that he continues to experience severe pain and discomfort in his right knee.

In the First Amended Complaint, Duncan alleges that the Knee Replacement System is an unreasonably dangerous device. Duncan brings the following causes of action: negligence; strict products liability—design defect; strict products liability—failure to warn/marketing defect; strict products liability—defective manufacture; breach of express warranty; breach of implied warranty; negligent misrepresentation; unjust enrichment; and deceptive trade practices.

Claiming that the First Amended Complaint contains nothing but legal conclusions and unsupported factual allegations, Smith & Nephew asks me to dismiss this lawsuit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(6) provides that a defendant is entitled to dismissal of a lawsuit when the plaintiff fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion, Duncan must plead "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion tests the formal sufficiency of the plaintiff's complaint, but should not be used to resolve factual issues or the merits of the case. *See In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (It is the responsibility of the district court at the Rule 12(b)(6) stage to decide "whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.").

In considering a Rule 12(b)(6) motion, I must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017). Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

## ANALYSIS

A. **STRICT PRODUCTS LIABILITY—DESIGN DEFECT**

Duncan alleges that Smith & Nephew defectively designed the Knee Replacement System that was implanted in his body. "To recover for a products liability claim alleging a design defect, a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009).

Determining whether the design is unreasonably dangerous requires balancing the utility of the product against the risk involved in its use. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 433 (Tex. 1997). The risk-utility analysis involves consideration of several factors, including:

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer.

*Id.* at 432. This risk-utility analysis is generally a question of fact for the jury to decide. *See, e.g., Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 260 (Tex. 1999).

Viewing the facts in the light most favorable to Duncan, as I must, I can easily draw a reasonable inference that the Knee Replacement System had a defect. Although Duncan's live pleading is not particularly detailed, I am required to take the alleged facts as true at this stage of the case. Those allegations include the following:

> 75. The [Knee Replacement System] is made from Oxinium, which is oxidized Zirconium which becomes ceramic.
>
> 76. Ceramic is subject to fracturing, which leaves the underlying metal exposed as well as particles surrounding the joint. As the body tries to digest the particles, the bond between the bone and the implant can be destroyed, creating a loosening of the implant, and sometimes wearing away part of the bone as well, resulting in pain and instability and the need for a revision surgery.
>
> 77. [Duncan] had to undergo a revision surgery.

> 78. There were and are safer, more effective and economically feasible materials and designs available that [Smith & Nephew] knew or should have known about, including polyethylene, aluminum oxide, titanium-niobium-nitride, and ceramic on crosslinked polyethylene.

Dkt. 10 at 12. Smith & Nephew contends that the First Amended Complaint does not mention which specific knee component was defective or how said component was rendered defective. I am not persuaded. It doesn't take a rocket scientist, Nobel Laureate, or a famed doctor to understand Duncan's simple contention that ceramic placed in a knee is likely to break, causing all sorts of problems. In my mind, the factual allegations set forth in the First Amended Complaint are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and footnote omitted).

Smith & Nephew next maintains that the First Amended Complaint alleges minimal supporting facts about the "safer alternative design" for the alleged defective knee components. To satisfy the "safer alternative design" requirement, Duncan need only plead facts that the Knee Replacement System "could have been alternatively designed in a safer manner and that such alternative designs were economically and technologically feasible." *Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 804 (S.D. Tex. 2019) (internal quotation marks and citation omitted). Duncan satisfies this requirement without difficulty. In the First Amended Complaint, Duncan notes that there are safer, more effective, and economically feasible materials available. Indeed, Duncan specifically mentions the names of several products that he believes constitute safer alternatives to the Oxinium utilized in the Knee Replacement System. In sum, Duncan has done enough at this early

juncture in the case to meet Rule 12(b)(6)'s requirements with respect to the design defect claim.

B.   **STRICT PRODUCTS LIABILITY—FAILURE TO WARN/MARKETING DEFECT**

Next, Duncan asserts a strict liability claim against Smith & Nephew for a failure to warn of the alleged risks of the Knee Replacement System. Specifically, Duncan avers:

> [Smith & Nephew] failed to provide adequate warnings to avoid the substantial danger of loosening of the component parts due to the defective design of the Product; the substantial risk of extensive bone loss resulting from the Product's use; and the substantial risk of necessary premature surgery to remove and replace the Product and/or its component parts.

Dkt. 10 at 14. In response, Smith & Nephew argues that this claim should be dismissed because Duncan fails to allege specific facts and relies only on legal conclusions.

"Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product." *Grinnell*, 951 S.W.2d at 426. Under Texas law, there are five elements of a failure to warn/marketing defect cause of action:

> (1) a risk of harm must exist that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product, (2) the supplier of the product knows or reasonably should foresee the risk of harm at the time the product is marketed, (3) the product has a marketing defect, (4) the lack of instructions or warnings renders the product unreasonably dangerous to the ultimate user or consumer of the product, and (5) the failure to warn or instruct causes the user's injury.

*Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 480 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Based on my review of the First Amended Complaint, I find that Duncan has successfully pled the elements of a failure to warn/marketing defect claim. Don't get me

6

wrong, the operative complaint could certainly contain a few more detailed factual allegations. Although the live pleading is 28-pages and 181 paragraphs long, much of it appears be a form pleading used in multiple product liability cases. But, when push comes to shove, there is more than enough to survive a Rule 12(b)(6) motion to dismiss. Duncan ticks off each element required under Texas law, sufficiently alleging that Smith & Nephew failed to include adequate warnings as to the Knee Replacement System's risk of fracture and failure. This claim survives—for now.

C. STRICT PRODUCTS LIABILITY—MANUFACTURING DEFECT

Duncan also alleges a strict liability claim against Smith & Nephew for defectively manufacturing the Knee Replacement System. Under Texas law, "[a] manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006) (quotation marks and citation omitted).

Smith & Nephew argues that Duncan fails to identify *any* facts supporting his naked assertion that the components of the Knee Replacement System did not comply with, or adhere to, the components' specifications. I completely agree. Merely reciting the legal elements required for a manufacturing defect claim is not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Although a complaint does not need "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of

7

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Here, Duncan blindly asserts that the Knee Replacement System "was defective in its manufacture." Notably, he has not alleged in any detail the Knee Replacement System's intended designs or specifications, how the manufacturing process deviated from those designs or specifications, or how such a deviation caused the alleged harm. This manufacturing defect claim, which requires Duncan to show that the ultimate product Smith & Nephew put on the market deviated from the planned design, actually conflicts with his design defect claim. The design defect claim is based on the premise that the Knee Replacement System, as designed, posed a threat to a patient who had the product implanted in his body. Duncan's "manufacturing defect allegations are therefore impermissibly conclusory and vague, and [Duncan] has not properly stated a claim under *Twombly* and *Iqbal* under . . . Texas . . . state law." *Fearrington*, 410 F. Supp. 3d at 803 (dismissing manufacturing defect claim for failure to allege supporting facts with any specificity).

D. **NEGLIGENCE**

In addition to the strict liability claims, Duncan asserts a cause of action for negligence based on the same facts as his strict liability claims. To properly allege a negligence claim, Duncan must plead: (1) Smith & Nephew owed a legal duty to Duncan; (2) Smith & Nephew breached that duty; and (3) the breach proximately caused Duncan's injury. *See Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019). "Under Texas law, where negligence claims are only based on the allegations that a product is unreasonably dangerous, the negligence theories are subsumed by the strict liability theories asserted." *Ardoin v. Stryker Corp.*, No. 4:18-CV-2192, 2019 WL 4933600, at *4 (S.D. Tex. Oct. 7,

8

2019) (internal quotation marks and citation omitted). I will, therefore, assume at this stage of the case that Duncan is pleading his negligence claim in the alternative.

Smith & Nephew seeks dismissal of the negligence claim on the ground that Duncan is unable to provide factual support for his assertion (i) that there was a defect in the knee components at the time they left Smith & Nephew's control, and (ii) that the alleged defect was the producing cause of his injuries. I have already addressed the sufficiency of Duncan's design defect claims, and I conclude that those allegations "are enough to plausibly support the elements of [his] negligence claim[]." *Id.* (denying motion to dismiss negligence claims when plaintiff sufficiently pled a design defect claim).

E. **BREACH OF WARRANTY**

Duncan also brings claims for breach of express and implied warranties. To maintain an action for breach of an express warranty, Duncan must show (1) that he relied on an express affirmation of fact or promise made by the seller relating to goods; (2) that those affirmations or promises formed the basis of the bargain; (3) that the goods failed to comply with the affirmations of fact or promise; and (4) injuries proximately caused by that failure. *See Great Am. Prods. v. Permabond Int'l*, 94 S.W.3d 675, 681 (Tex. App.—Austin 2002, pet. denied). Duncan can pursue "a cause of action for breach of the implied warranty of merchantability [by showing]: 1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury." *Polaris Indus. Inc. v. McDonald*, 119 S.W.3d 331, 337 (Tex. App.—Tyler 2003, no pet.).

9

In just one paragraph in the Motion to Dismiss, Smith & Nephew contends that the factual allegations contained in the First Amended Complaint do not support claims for breach of express warranty or breach of implied warranty of merchantability. According to Smith & Nephew, Duncan merely recites the legal elements for breach of warranty claims without any specific factual allegations.

Although the First Amended Complaint has plenty of room for improvement, it does make the necessary allegations to survive a motion to dismiss. On the implied warranty of merchantability claim, the lawsuit alleges that Smith & Nephew marketed, sold, and distributed the Knee Replacement System to the medical community and consumers, fully intending that product to be inserted into the human body. In terms of the express warranty claim, Duncan states:

> [Smith & Nephew], through its officers, directors, agents, representatives, and written literature and packaging, and written and media advertisements, expressly warranted that its Product was safe and effective and fit for use by consumers, was of merchantable quality, did not create the risk of or produce dangerous side effects, including, but not limited to, severe pain and surgery, and was adequately tested and fit for its intended use.

Dkt. 10 at 19. Granted, this is a close call. But I must keep in mind that the First Amended Complaint must be liberally construed in favor of Duncan, and all facts set forth in the operative pleading must be taken as true. *See Harrington*, 563 F.3d at 147. With these principles in mind, I conclude that Duncan has done enough at the pleading stage to withstand dismissal of the warranty claims.

F. **NEGLIGENT MISREPRESENTATION, UNJUST ENRICHMENT, TEXAS DECEPTIVE TRADE PRACTICES ACT, AND PUNITIVE DAMAGES**

Finally, Duncan asserts causes of action for negligent misrepresentation, unjust enrichment, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). Duncan also claims that he is entitled to punitive damages for Smith & Nephew's outlandish conduct.

In seeking to dismiss the negligent misrepresentation claim, Smith & Nephew maintains that the First Amended Complaint contains no factual support for a single element of a negligent misrepresentation claim. On the unjust enrichment claim, Smith & Nephew argues that the cause of action falls by the wayside because Duncan has failed to show that Smith & Nephew provided unsafe and ineffective knee components, or that Smith & Nephew inequitably received payment for Duncan's purchase of the Knee Replacement System. With respect to the DTPA claim, Smith & Nephew argues that Duncan fails to plead the factual basis for his or any physicians' reliance on any false, misleading, or deceptive acts by Smith & Nephew. Smith & Nephew further contends that Duncan fails to provide any factual support showing how, when, and where each of the physicians who performed Duncan's surgeries were misled regarding Smith & Nephew's knee components. Finally, Smith & Nephew moves to dismiss Duncan's request for punitive damages based on his alleged failure to provide any factual support for such a damage award.

In his response to the Motion to Dismiss, Duncan does not bother to respond to Smith & Nephew's arguments seeking dismissal of the negligent misrepresentation claim,

11

the unjust enrichment claim, or the DTPA claim.  Likewise, Duncan does not counter Smith & Nephew's arguments concerning the appropriateness of punitive damages.  When a plaintiff fails to defend or pursue a claim in response to a motion to dismiss, the claim is deemed abandoned.  *See Tex. Cap. Bank N.A. v. Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (plaintiff abandoned his malicious criminal prosecution claim when he failed to defend the claim in response to a motion to dismiss); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to a motion to dismiss).  Accordingly, Duncan has abandoned his negligent misrepresentation, unjust enrichment, DTPA, and punitive damages claims against Smith & Nephew.  I, therefore, grant the motion to dismiss with respect to these claims.

## CONCLUSION

For the reasons explained above, I recommend that Defendant Smith & Nephew, Inc.'s Rule 12(b)(6) Motion to Dismiss Plaintiff Ronald Bruce Duncan's First Amended Complaint (Dkt. 11) be **GRANTED** in part and **DENIED** in part.  To be clear, I recommend that the claims for strict liability—manufacturing defect, negligent misrepresentation, unjust enrichment, DTPA violations, and punitive damages be dismissed.  The other claims for affirmative relief should remain.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to

file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 5th day of October, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE